IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JULIE J.,[1]    No. 6:21-cv-01384-HZ

        Plaintiff,    OPINION & ORDER

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Katherine Eitenmiller
Mark Manning
WELLS, MANNING, EITENMILLER & TAYLOR, P.C.
474 Willamette Street
Eugene, Oregon 97401

    Attorneys for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Ryan Lu
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Julie J. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court reverses the Commissioner's decision and remands this case for further administrative proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on July 24, 2018, alleging an onset date of June 2, 2019. Tr. 117.[2] Plaintiff's date last insured ("DLI") is December 31, 2023. Tr. 17. Her application was denied initially and on reconsideration. Tr. 119, 132.

On December 22, 2020, Plaintiff appeared with counsel for a telephonic hearing before an Administrative Law Judge ("ALJ"). Tr. 31, 33. On February 22, 2021, the ALJ found Plaintiff not disabled. Tr. 25. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on "Bipolar II, Anxiety, PTSD, Trauma/Severe bodily injury from resisting arrest." Tr. 225. At the time of her alleged onset date, she was 36 years old.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 9.

Tr. 61. She has a master's degree in library information science and past relevant work experience as a Library Assistant, Library Technician, Case Aide, and Optometrist's Assistant. Tr. 51, 24.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date. Tr. 17. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "bipolar disorder, anxiety disorder, post-traumatic stress disorder (PTSD), history of alcohol abuse, and gambling addiction." Tr. 18. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 18. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform "a full range of work at all exertional levels" with the following non-exertional limitations: "[S]he is able to perform simple, routine tasks and can tolerate occasional interaction with the public." Tr. 19. Because of these limitations, the ALJ concluded that Plaintiff could not perform her past relevant work. Tr. 23. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "Office Helper"; "Pricer, Retail"; and "Hand Packager/Inspector." Tr. 25. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 25.

**STANDARD OF REVIEW**

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

**DISCUSSION**

Plaintiff argues the ALJ erred by: (1) improperly rejecting Plaintiff's subjective symptom testimony; (2) finding the medical opinion of Gregory Cole, Ph.D., unpersuasive; and (3) rejecting, without comment, the lay witness testimony of Plaintiff's mother. This Court agrees.

**I.  Subjective Symptom Testimony**

Plaintiff argues the ALJ erred in rejecting her subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ

determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

In June 2018, Plaintiff experienced a severe manic episode triggered by a change in her medications. Tr. 43. During this episode, Plaintiff was in a high-speed car chase with police and was charged with reckless endangerment and resisting arrest. Tr. 37, 359. After her arrest, she was placed on a two-physician psychiatric hold at a local hospital, where she was treated for six weeks. Tr. 359, 475. She was subsequently hospitalized twice more that summer. Tr. 38, 475.

Because she ran out of medical leave during her hospitalizations, she lost her job at a local library. Tr. 37. Plaintiff testified that she can no longer work full-time because of her

6 – OPINION & ORDER

history of mental illness and childcare concerns. Tr. 51. Specifically, stress causes her to sleep less, which can lead to mania even when she is on medication. Tr. 52. At the hearing, she said she does not feel as stable as she has in the past with medication, and she believes that it is too risky to push herself to do something that could lead to another psychotic episode. Tr. 52.

Plaintiff also experiences depressive episodes. During these periods, she can sleep between sixteen and twenty hours a day, including daytime naps. Tr. 49. She testified that she was fairly depressed in the year after her manic episode and still struggles with depression even while taking her medications. Tr. 43. Though she has only had three to four episodes of major depression in seventeen years, she testified that it can flare from day-to-day, too. Tr. 44.

On the average day, Plaintiff tries to stay busy by learning new things. She takes French lessons on the Duolingo app and drawing lessons through online videos. Tr. 45–46. She also spends time caring for her son—who was born in 2019—and helping her mom sell wedding gowns in her bridal shop. Tr. 45–47. She lives with her mom, who helps her care for her son and her pet cat. Tr. 39, 49, 248. Plaintiff also helps with some household chores, such as cooking, laundry, and washing dishes. Tr. 249–50. In her function report, she stated that her condition makes it difficult for her to focus and accomplish day-to-day tasks. Tr. 247–54. She struggles with her memory, concentration, understanding, following instructions, and getting along with others. Tr. 252.

The ALJ gave three reasons for rejecting Plaintiff's subjective symptom testimony: (1) Plaintiff's ability to "perform a robust range of activities of daily living"; (2) Plaintiff's part-time work at her mom's bridal shop, and (3) inconsistency with the medical record, which shows improvement and stabilization of Plaintiff's condition with treatment. Tr. 20.

///

A.      Activities of Daily Living

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), and "the mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping . . . does not in any way detract from his credibility," *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick*, 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach his conclusion on the claimant's credibility. *Id.* at 722–23.

The ALJ rejected Plaintiff's subjective symptom testimony because she "is able to perform a robust range of activities of daily living inconsistent with the alleged severity and limiting effects of her symptoms." Tr. 22. Specifically, the ALJ noted that Plaintiff can care for her personal hygiene independently, do laundry, wash dishes, cook, drive, shop, and use public transit. Tr. 22. He emphasized that she remembers what she needs while shopping without a list and that she enjoys computer games, listening to music, and seeing friends on a regular basis. Tr. 22. The ALJ also noted that Plaintiff "is able to care for her infant son after a period of depression during her pregnancy." Tr. 22.

The ALJ's reasoning is not clear, convincing, or supported by substantial evidence. Many of the cited activities are taken out of context. For example, Plaintiff was not able to care for her infant son without help. Plaintiff testified that prior to the pandemic, she hired a babysitter to help with her son so she could sleep and take care of things outside the home. Tr. 49. Since then, her mom has worked from home and has helped her with her son. Tr. 49. Similarly, Plaintiff wrote in her function report that she has only "brief social engagements" and cannot go to the places she used to. Tr. 251. She struggles with her hobbies because she is "unable to think clearly enough to block out distractions" and her "balance is very wobbly now." Tr. 251. Contrary to the ALJ's findings, Plaintiff is not able to engage in a "robust range of daily activities."

In addition, Plaintiff's activities of daily living are not inconsistent with the alleged severity and limiting effects of her symptoms. Plaintiff's ability to care for herself, shop, drive, cook, and take care of her personal hygiene do not conflict with her testimony that she spends most of the day sleeping—especially when depressed—or that the additional stress of work may trigger another manic episode. Accordingly, the ALJ erred.

B.     Part-Time Work

The ALJ may consider work that a claimant engaged in—regardless of whether that work amounted to substantial gainful activity—in making his disability determination. SSR 96-7 (prior work and efforts to work are factors used to evaluate a claimant's credibility); *see also* 20 C.F.R. §§ 404.1571, 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). For example, in *Bray v. Commissioner of the Social Security Administration*, the Ninth Circuit affirmed the ALJ's rejection of the plaintiff's testimony, in part because her part-time work as a personal caregiver

9 – OPINION & ORDER

for two years conflicted with the plaintiff's statement that she was limited in her ability to walk, lift, and carry. 554 F.3d 1219, 1226–27 (9th Cir. 2009).

Here, the ALJ found that Plaintiff's symptom testimony is inconsistent with her part-time work at her mother's bridal shop. Tr. 22. He noted that this work did not constitute substantial gainful activity but nevertheless concluded that "it demonstrates her ability to perform work-related functions." Tr. 22.

The ALJ's reasoning is not clear or convincing. First, the ALJ has not explained how Plaintiff's part-time work conflicts with her testimony, and Plaintiff did not testify that she could not perform any work-related functions. Rather, Plaintiff testified that she has episodes where she sleeps for extended periods of time due to her depression, and she is concerned that working full-time could cause another period of psychosis, particularly as she does not feel as stable as she has in the past on medications. Tr. 49, 52.

Second, Plaintiff's part-time work is quite limited. Plaintiff works in her mom's bridal shop selling wedding gowns. Tr. 46–47. She testified that their business has never turned a profit and they are not very busy. Tr. 40. The shop is open by appointment only. Tr. 40. Prior to the pandemic, she spent five to ten hours a week in the shop and another five hours outside of the shop handling email orders and financial information. Tr. 40. These limited work activities in a family business with a flexible schedule do not conflict with Plaintiff's testimony. *See Tammy H. v. Kijakazi,* 2023 WL 3555845, *5 (D. Or. Jan. 23. 2023) (finding the ALJ erred where it was "not clear how [the plaintiff's] testimony suggests that [the plaintiff's] work activities were more taxing than her claimed limitations"). Accordingly, the ALJ erred.

///

///

C.   Inconsistency with the Record & Improvement with Treatment

The ALJ is instructed to consider objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Inconsistency between Plaintiff's testimony and the objective medical record is a valid reason to discount Plaintiff's testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding where the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). The ALJ may also take into account the effectiveness of any treatment. *See Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995) ("Factors that the adjudicator may consider when making such credibility determinations include the . . . effectiveness or adverse side effects of any pain medication.").

The ALJ found that Plaintiff's testimony is inconsistent with the medical record, which "describes a period of decline in the claimant's condition [that] improved with stabilized treatment." Tr. 20. The ALJ acknowledged that Plaintiff had an "episode of decompensation" in June 2018. Tr. 20–21. But he went on to emphasize medical records that show normal mental status exams and improvement in Plaintiff's condition with medication. Tr. 22. The ALJ summarized his findings as follows:

> Considered as a whole, the evidence of record suggests a period of decline in the claimant's functioning after a change in her medication. This resulted in a series of inpatient psychiatric hospitalizations in the following months. However, after proper treatment, her condition appears to have improved[.]

Tr. 22.

The ALJ's reasoning is not clear, convincing, or supported by substantial evidence. First, the Court notes that Plaintiff experienced three lengthy psychiatric hospitalizations between June and September 2018 and was civilly committed for six months due to her psychiatric conditions.

11 – OPINION & ORDER

Tr. 475–76. Her initial hospitalization was prompted by a high-speed chase of Plaintiff by police in June 2018. Tr. 359. Plaintiff was travelling at speeds of over 100 miles-per-hour. Tr. 359. When she arrived at the emergency department, she was screaming that people were trying to kill her and placed on a two-physician hold. Tr. 359, 362. She was not cooperative with providers and ultimately required a significant amount of antipsychotic medications, mood stabilizers, and benzodiazepines to control her agitation. Tr. 365, 372. She had disorganized throughts and hallucinations. Tr. 372. Shortly after she was discharged from the hospital the first time, she was readmitted for suicidal ideation and worsening symptoms of mania and psychosis. Tr. 746, 390. She was then hospitalized a third time after being verbally aggressive towards her mother, who also reported that Plaintiff had been threatening to kill her and bringing transient individuals into her home at night. Tr. 430, 797.

      Though Plaintiff's condition may have changed after this significant period of decompensation, it does not demonstrate—as the ALJ's opinion suggests—improvement in her functioning such that Plaintiff was able to work. Instead, most of the record shows a significant period of depression in the year that followed Plaintiff's manic episode, which the ALJ largely fails to address. For example, in fall of 2018 after Plaintiff's third hospitalization, Plaintiff presented with disorganized thoughts and difficulty concentrating. Tr. 550. In early 2019, Plaintiff told providers she was sleeping for twelve to sixteen hours a day and not engaging with other people or helping out around the house. Tr. 886–87. One provider noted she had hypersomnia and lethargy and presented with a blunted affect and sparse speech. Tr. 529. Two psychological evaluations in the first half of 2019 showed depression and mood instability. Tr. 471, 493. In one of them, the provider also noted that Plaintiff may underrepresent the extent of her symptoms and that Plaintiff's mother described her as "almost nonfunctional." Tr. 470, 477.

Plaintiff continued to report excessive sleep and symptoms of depression through at least August 2019. Tr. 522, 511. Some of these symptoms continued into the next year. Tr. 883 (reporting depressed mood and anxiety at June 2020 appointment), 880 (reporting depressed mood in July 2020 appointment), 879 (reports sleeping up to 13 hours a day at July 2020 appointment). In the context of this record, any "improvement" or "stabilization" of Plaintiff's symptoms does not undermine Plaintiff's testimony that her condition is debilitating. *See, e.g.*, *Timothy S. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-cv-02043-HZ, 2019 WL 2006689, at *5 (D. Or. May 3, 2019) ("[T]he stability of Plaintiff's symptoms does not indicate that the pain is resolved, only that it is not getting worse."); *Kirk M. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-cv-01663-HZ, 2018 WL 6651525, at *4 (D. Or. Dec. 19, 2018) (finding that a plaintiff's stable glaucoma did not mean plaintiff was no longer visually impaired). Nor do Plaintiff's normal mental status exams conflict with her testimony about her symptoms of depression or concerns about decompensation under stress. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (noting that "observations of cognitive functioning during therapy sessions [did] not contradict [the plaintiff's] reported symptoms of depression and social anxiety").

In addition, many of the records that the ALJ cites as supporting his conclusion that Plaintiff's condition improved are from appointments two years after Plaintiff's initial period of decompensation. *See* Tr. 21–22. But a claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). It was an error for the ALJ to reject Plaintiff's claim of disability for the entire relevant period because of a short period of improvement more than a year after Plaintiff's initial manic episode. *See Garrison v. Colvin*, 759

F.3d 995, 1017 (9th Cir. 2014) ("It is error for an ALJ to pick out a few isolated instances of improvement over a period of months . . . and to treat them as a basis for concluding a claimant is capable of working.").

## II.    Medical Opinion Evidence

Plaintiff argues the ALJ erred in finding the medical opinion of Gregory Cole, Ph.D., unpersuasive. Dr. Cole conducted a psychodiagnostic evaluation of Plaintiff on May 2, 2019. Tr. 489. After interviewing Plaintiff, conducting a number of tests, and reviewing some medical records, Dr. Cole concluded that Plaintiff had "Bipolar I Disorder, Most Recent Episode Depressed (Mixed-Symptoms)-Moderate; and Unspecified Anxiety Disorder." Tr. 492. He noted that Plaintiff "exhibited mild problems in the areas of attention and concentration." Tr. 493. Dr. Cole also found: "From the results of this evaluation, if the client pursues a vocational placement in the near future, then it is presumed that her mood instability and the potential for psychotic symptomology under stress, would be the primary factors which would impact her overall level of vocational success." Tr. 493.

New regulations about weighing medical opinion evidence apply to claims filed on or after March 27, 2017. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Under the new regulations, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. *Id.* Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

The ALJ found Dr. Cole's opinion—specifically, that Plaintiff's mood instability and potential for psychosis under stress would impact her level of vocational success—unpersuasive. Tr. 23. The ALJ discounted this opinion because it was given "during the period in which the claimant's treatment plan was still being developed." Tr. 23. He noted that mental status examinations performed after the evaluation were "generally within normal limits." Tr. 23.

The ALJ's decision is not supported by substantial evidence. Though the ALJ is correct that the opinion was rendered in May 2019, this was nearly a year after Plaintiff's manic episode. As noted above, to succeed on a claim of disability, a claimant must demonstrate that they were disabled for a continuous period of 12 months or more. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Dr. Cole's opinion, therefore, is relevant to whether Plaintiff was disabled for some period of time, even if it may not be the most recent evidence in the record. Further, normal mental status exams after Dr. Cole's evaluation do not conflict with Dr. Cole's opinion,

15 – OPINION & ORDER

which finds mild problems with attention and concentration, mood instability, and the potential for psychosis under stress. Tr. 489. Accordingly, the ALJ erred in rejecting Dr. Cole's opinion.

### III.     Lay Witness Testimony

Plaintiff argues that the ALJ erred in rejecting, without comment, the testimony of Plaintiff's mother, Frances J., who completed a third-party function report in October 2018. Tr. 255. She stated that Plaintiff's manic episode earlier that year has made her "unable to process information" and "affects her ability to complete simple, everyday tasks." Tr. 255. She described Plaintiff's mental state as confused, agitated, angry, defeated, scared, and worried. Tr. 255. According to Frances, Plaintiff spends a lot of time walking and with homeless people, whose plight has consumed her since she came home from the hospital. Tr. 258–59. In contrast to Plaintiff's function report, Frances describes more difficulties with daily activities, including cleaning, laundry, and cooking. Tr. 257. Frances has also observed that Plaintiff can no longer process information or follow instructions, and she does not read, write, study, or watch movies. Tr. 259–60. Plaintiff cannot handle stress and will scream, throw things, or cry. Tr. 260.

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d). Under the new regulations, however, the ALJ must still

articulate their assessment of lay witness statements. *Tanya L.L. v. Comm'r Soc. Sec.*, 526 F.Supp.3d 858, 869 (D. Or. 2021).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

Here, the ALJ erred by failing to address Frances's lay witness testimony. This error was not harmless. Frances's testimony describes more significant limitations than those described by Plaintiff, including struggles with activities of daily living and other household tasks even after Plaintiff's hospitalization. Tr. 260. She describes more significant issues with following instructions and engaging in her limited hobbies. Tr. 258, 260. And Frances gave more detail as to Plaintiff's mental state under stress, noting that even simple tasks like cleaning can trigger an extreme response. Tr. 257, 260. These more significant observations by Frances are also consistent with the observation of one of Plaintiff's providers, who noted that Plaintiff may underrepresent her own symptoms. Accordingly, the ALJ erred in failing to articulate his assessment of Frances's testimony.

///

///

17 – OPINION & ORDER

**IV.     Remand for Further Proceedings**

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has three steps).  First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020.  Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.*  Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.*  To remand for an award of benefits, each part must be satisfied.  *Id.*; *see also Treichler*, 775 F.3d at 1101 (When all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule."). The "ordinary remand rule" is the proper course except in rare circumstances. *Treichler*, 775 F.3d at 1101.

The ordinary remand rule is appropriate here. There is no doubt Plaintiff suffered a lengthy period of debilitating mania in 2018, and that she has experienced depressive symptoms in the years that followed. There is some ambiguity, however, as to the degree of ongoing symptoms of Plaintiff's condition and its limiting effects. And the improperly rejected medical opinion and lay witness testimony fail to completely resolve this issue because they were rendered earlier in the relevant period. Moreover, this evidence does not offer concrete functional limitations which the Court could credit as true to conclude that Plaintiff was disabled. Accordingly, the Court remands this case for further proceedings.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.

IT IS SO ORDERED.

DATED:_____April 18, 2023\_\_\_\_\_.

_____
MARCO A. HERNÁNDEZ
United States District Judge